## CHESTER W. CHAPIN *vs.* VERMONT & MASSACHUSETTS RAILROAD COMPANY.

The holder of a bond issued by a railroad corporation, payable " to ———," and subsequently confirmed by the legislature, may sue thereon in his own name.

A railroad corporation issued bonds payable " to ———," and purporting on their face to be secured by a mortgage of the same date to trustees of all the property of the corporation; and such a mortgage was in fact executed. The legislature afterwards ratified and confirmed " the proceedings " of that date, " whereby said corporation conveyed their said railroad property in mortgage to " certain persons, " trustees for the bondholders in said mortgage mentioned, to secure the holders of said bonds the payment of the same." *Held*, that these bonds were thereby confirmed, and might be sued upon in the name of any holder.

ACTION OF CONTRACT against a railroad corporation established by law in this commonwealth, upon this instrument :

" Vermont and Massachusetts Railroad Company. No. 582. Mortgage Bond. Amount $1000. The Vermont and Massachusetts Railroad Company, for value received, hereby promise to pay to ——————————— the sum of one thousand dollars, at the office of the treasurer, in the city of Boston, on the first day of July which will be in the year one thousand eight hundred and fifty five; and also interest for the same semi-annually, on the first day of January and July in each and every year after the date hereof, upon the surrender of the corresponding warrant.

" In witness whereof, and pursuant to a [Seal.] vote of the stockholders of said company, passed on the 29th day of June 1849, the president and treasurer have hereunto set their hands and the seal of said corporation, this second day of July 1849. John Rogers, Treasurer, Thos. Whittemore, President.

" I hereby certify that this bond is secured by mortgage, dated July 11th 1849. Jabez C. Howe, one of the trustees."

" Secured by a mortgage of the road for the sum of $1,100,000, made to Robert G. Shaw of Boston, John Davis of Worcester, and Jabez C. Howe of Boston, in trust for the benefit of the bondholders."

The defendants admitted the signatures and the official

capacities of the signers. And the parties agreed that the instrument declared on and others like it, amounting in all to $1,100,000, were issued in pursuance of a vote of the stockholders of the defendant corporation, and was secured by mortgage as above stated therein; that the issue of said instruments and the execution of the mortgage therein mentioned were confirmed and legalized by *St.* 1850, *c.* 233; and that this instrument was sold at or about its date by the defendants at auction, and purchased by some one other than the plaintiff, and came to the plaintiff after one or more transfers by purchase for value in July 1852; and submitted the case to the decision of the court upon these facts.

*A. L. Soule,* for the plaintiff.

*H. C. Hutchins,* for the defendants, relied chiefly on the decision of the circuit court of the United States for the first circuit in *White* v. *Vermont & Massachusetts Railroad,* since reversed by the supreme court of the United States. 21 Law Reporter, 469; 21 How. 575.

MERRICK, J.[*] There is no doubt but that the instrument declared on in the present action is a bond. And it is a familiar and well settled rule of law, that bonds and other contracts under seal are not, in general, negotiable instruments, the legal interest in which may be transferred from one owner to another by mere delivery, so that an action thereon can be maintained by the assignee in his own name. They may be assigned; but after assignment, as well as before, all actions to recover damages upon the failure of the obligor to perform any stipulated engagements must be brought in the name of the first assignor. 1 Parsons on Con. 196, 240. *Skinner* v. *Somes,* 14 Mass. 107.

It has, however, been held in some courts that bonds, with coupons, payable to bearer, pass by delivery from hand to hand, and that purchasers of them for good consideration paid may at their maturity maintain actions upon them for the recovery of their contents. *Morris Canal & Banking Co.* v.

---

[*] This case was decided, and the subsequent cases, except *Webster* v. *Munger, post,* 584, and *Stone* v *White, post,* 589, were argued and decided at Boston in January 1858, before all the judges but *Thomas,* J.

*Fisher*, 1 Stockton, 667. Redfield on Railways, § 239, and cases there cited. And it is specially provided by one of our own statutes that "all bonds and other obligations under seal, for the payment of money, purporting to be payable to the bearer, or to some person designated or bearer, or payable to order, issued by any corporation or joint stock company," shall be negotiable like promissory notes. *St.* 1852, *c.* 76.

But the instrument on which the plaintiff declares is anomalous; it does not come under the description contained in the statute. It is not payable to the bearer, or to any designated person, or to the order of any one. No payee is named in it. Yet in all other respects it is a complete and perfect instrument; and a blank space is left, wherein may be written, without interlineation, erasure or defacement, the name of an obligee.

It is agreed by the parties that this bond, together with many others similar to it, amounting in the whole to about the sum of eleven hundred thousand dollars, were sold, at or near the time they bore date, by the defendants at public auction to numerous purchasers. The defendants realized the money for which they were sold, and applied it, partly in payment of pre-existing obligations, and partly in expenditures to carry on and complete the enterprise in which they were then engaged. All these bonds purport upon their face to be secured by a mortgage of the same date made by the defendants of all their railroad property to trustees for that express purpose; which mortgage was in fact duly executed by them. At a subsequent period it was provided by a statute of this commonwealth, under whose authority the defendants hold their charter, that their "proceedings whereby they conveyed, agreeably to a vote of the stockholders passed on the 29th day of June 1849, their said railroad property in mortgage to John Davis, Robert G. Shaw and Jabez C. Howe, trustees for the bondholders in said mortgage mentioned, to secure the holders of said bonds the payment of the same," were thereby ratified and confirmed. *St.* 1850, *c.* 233.

The proceedings of the defendant corporation, mentioned in the statute, included as well the contracting of the debts and the issuing of their bonds therefor, as the execution of the mort-

gage. Indeed, as in other instances when property is pledged for security, the debt must have been considered the principal thing to be protected, and the mortgage only as collateral to the general purpose. Hence it is obvious that it was these various contracts of indebtedness, into which the defendants had entered, which it was the object and purpose of the legislature to ratify and confirm. In issuing so large a number of bonds, each of them payable at a future and distant period, it is impossible to suppose that the defendants intended or expected that they should all remain in possession and ownership of the original purchasers. It could not but have been foreseen that many of them would necessarily and frequently change hands many times before they should become due; yet it was plainly the intention of the corporation to make themselves debtors to every person by whom any of the bonds should be then justly holden It is therefore fairly to be presumed, and indeed it is an unavoidable implication from all their proceedings, that they consented that any *bona fide* holder of one or more of these bonds, for value, might perfect the contract by inserting at his own pleasure his name as obligee of the bond in the blank space which had been left in it for that purpose. And this is undoubtedly one of the things which it was the object and design of the statute to ratify and confirm. It could not have escaped the attention of the legislature, of the bondholders, or of the defendants, that something of this kind was indispensable to make the creditors of the corporation secure. That was the end which, since it is exactly what good faith and justice required, all the parties in interest, as well as the government, must be supposed to have sought to accomplish; and the enactment of the statute was well adapted and sufficient for the purpose. The plaintiff then, being a purchaser for value and the true owner of the bond in suit, had a right, under the implied authority conferred upon him by the defendants and subsequently ratified by law, to insert his own name in the bond as the payee or obligee thereof; and thereupon the instrument became in all its parts a perfect and complete contract, and he may well maintain an action upon it in his own name.

*Judgment for the plaintiff.*